IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN BERTIER<br>220 Crawford Ave<br>Lansdown, PA 19050<br><br>and<br><br>CHISA HARRIS<br>709 Observatory Drive<br>Bear, DE 19701<br><br>Plaintiffs,<br><br>v.<br><br>ASSESSMENT & TREATMENT<br>SERVICES<br>1225 Vine Street, 3rd Floor<br>Philadelphia, PA 19107<br><br>and<br><br>JOHN DOES 1-10<br><br>Defendants. | CIVIL ACTION NO:<br><br>COMPLAINT WITH JURY DEMAND |

**CIVIL ACTION COMPLAINT**

Plaintiffs Jean Bertier ("Plaintiff Bertier") and Chisa Harris ("Plaintiff Harris"), by and through undersigned counsel, complain as follows against Assessment & Treatment Services ("Defendant ATA") and John Does 1-10 (hereinafter collectively "Defendants").

**INTRODUCTION**

1. Plaintiffs have initiated this action to redress Defendants' violations of the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Pennsylvania Human Relations Act ("PHRA"), the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law

("PWPCL") and Pennsylvania common law for Breach of Contract, Unjust Enrichment and Detrimental Reliance. Defendants subjected Plaintiffs to a hostile work environment, discrimination and harassment on the basis of their race (African American). Defendants subjected Plaintiff Bertier to gender discrimination on the basis of his gender (male). Defendants fired and/or constructively discharged Plaintiffs in retaliation for their complaints about same and/or due to their race. Furthermore, Defendants failed to compensate Plaintiffs for all time worked in accordance with the parties' contracts and failed to pay proper overtime compensation in accordance with state and federal law. As a result, of Defendants' conduct, Plaintiffs have suffered damages, as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.*, 42 U.S.C. § 1981, *et seq.* and Title VII of the Civil Rights Act of 1964.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

4. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants reside in and/or conduct business in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiffs have exhausted all administrative remedies required as a prerequisite to the filing of their instant Title VII and PHRA claims.

## PARTIES

6. The foregoing paragraphs are incorporated herein as if set forth in full.

7. Plaintiff Jean Bertier is an adult individual who resides at the address set forth in the caption.

8. Plaintiff Chisa Harris is an adult individual who resides at the address set forth in the caption.

9. Defendant ATA is a business entity with a place of business at the address set forth in the caption that conducts business in Pennsylvania.

10. Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants which resulted in Defendants' failure to pay Plaintiffs proper overtime compensation in accordance with the FLSA and the PMWA.

11. Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Plaintiffs' pay.

12. At all times relevant herein, Defendants acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein as if set forth in full.

14. Plaintiff Bertier is a Haitian-American male.

15. Plaintiff Harris is an African-American female.

16. In or around August 2016, Defendants hired Plaintiff Harris as a Lead Clinician for its Frederick Douglas location.

17. In or around November 2016, Defendants hired Plaintiff Bertier as a Lead Clinician for its Frederick Douglass location.

18. Plaintiffs Bertier and Harris provided therapeutic services to Defendants' clients, as well as support and consultative services to Defendants at its Frederick Douglas location, as part of Defendants' School Therapeutic Services ("STS") program.

19. During Plaintiff Bertier's employment with Defendants, he was an excellent employee and did not receive any negative performance reviews.

20. During Plaintiff Harris' employment with Defendants, she was an excellent employee and did not receive any negative performance reviews.

21. Throughout their employment for Defendants, Plaintiffs were subjected to and witnessed severe and pervasive race, national origin and gender discrimination by supervisor Shirl Hunter ("Supervisor Hunter").

22. Throughout their employment for Defendants, Plaintiffs were further denied agreed upon wages and misclassified as independent contractors, denying them overtime compensation despite the fact that Plaintiffs were in fact employees and worked more than forty (40) hours in many workweeks.

23. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

**Failure to Pay Proper Overtime Compensation**
**(Plaintiffs v. Defendants)**

24. The foregoing paragraphs are incorporated herein as if set forth in full.

25. Upon Plaintiffs hiring, Defendants required Plaintiffs to sign "Consulting Agreements" that purported to classify Plaintiffs as independent contractors while they were employed by Defendants.

26. Throughout the course of their employment for Defendants, Defendants misclassified Plaintiffs as independent contractors, despite that:

a. Defendants had the right to control when, where, and how Plaintiffs performed their jobs;

b. Defendants furnished all materials and equipment that Plaintiffs used for their work;

c. Plaintiffs retained a continuing relationship with Defendants, working at least 40 hours per week in most weeks;

d. Defendants retained the right to, and did, assign additional work projects to Plaintiffs;

e. Defendants assigned Plaintiffs supervisors, who supervised their work throughout their employment with Defendants;

f. Defendants set the hours that Plaintiffs worked;

g. Plaintiffs were paid by the hour, on a bi-weekly basis;

h. Plaintiffs did not have the power to hire, fire, or pay assistants;

i. Plaintiffs could do little to increase their profitability other than attempt to obtain more work from Defendants;

j. The work that Plaintiffs performed was part of Defendants' regular business;

k. Plaintiffs did not engage in their own distinct occupations or businesses;

l. Plaintiffs were economically dependent on Defendants;

m. Defendant retained the right to and did fire Plaintiffs.

27. As a result of Defendants' misclassification of Plaintiffs as independent contractors, Defendants failed to pay Plaintiffs *any* overtime compensation in accordance with the FLSA and PMWA, despite the fact that Plaintiffs often worked more than forty (40) hours per week.

28. Throughout his tenure with Defendants, Plaintiff Bertier regularly worked approximately fifty (50) to sixty (60) hours per week, but never received premium pay for any hours worked over forty (40) in a workweek.

29. Throughout her tenure with Defendants, Plaintiff Harris regularly worked approximately fifty (50) to sixty (60) hours per week, but never received premium pay for any hours worked over forty (40) in a workweek.

30. At all times relevant herein Defendants knew or should have known that Plaintiffs were entitled to premium pay in accordance with the FLSA and PMWA.

31. As a result of Defendants' illegal conduct, Plaintiffs have been harmed.

**Breach of Contract**
**(Plaintiffs v. Defendants)**

32. The foregoing paragraphs are incorporated herein as if set forth in full.

33. Upon Plaintiffs hiring, Defendants required Plaintiffs to sign "Consulting Agreements" as a condition of their employment with Defendants.

34. The Consulting Agreements that Plaintiffs signed stated in relevant part:

"4. COMPENSATION.  In consideration for the services required of Consultant hereunder, [Defendants] agree[] to compensate [Plaintiffs] as follows:

4.1 HOURLY RATE of $ 40.00 per hour for all hours worked."

Consulting Agreement, *attached hereto as* Exhibit A at p. 3.

35. Despite the parties' written agreements, Defendants failed to compensate Plaintiffs $40 per hour for all hours worked.

36. Throughout his tenure with Defendants, Plaintiff Bertier regularly worked approximately fifty (50) to sixty (60) hours per week but was only compensated for approximately fifteen (15) hours per week.

37. Throughout her tenure with Defendants, Plaintiff Harris regularly worked approximately fifty (50) to sixty (60) hours per week but was only compensated for approximately fifteen (15) to thirty (30) hours per week.

38. At no point did Defendants notify Plaintiffs that they would not be compensated $40 per hour for each hour worked.

39. At all times relevant herein Plaintiffs expected to be compensated $40 per hour for each hour that they worked.

40. At all times relevant herein Defendants were aware of the number of hours that Plaintiffs worked each week.

41. As a result of Defendants unlawful conduct, Plaintiffs have been harmed.

## Race Discrimination
### (Plaintiffs v. Defendants)

42. The foregoing paragraphs are incorporated herein as if set forth in full.

43. Throughout the course of their employment for Defendants, Plaintiffs were subjected to and witnessed severe and pervasive, gender, national origin and racial discrimination by Supervisor Hunter.

44. Supervisor Hunter is a Caucasian female.

45. Supervisor Hunter made a number of disturbing, discriminatory statements while Plaintiffs were employed by Defendants, including but not limited to:

   a. In or around November 2016, Supervisor Hunter told Plaintiffs' co-workers Lead Clinician Bernice Williams ("LC Williams")(African American) and Lead Clinician Aida Garrick ("LC Garrick") that "being a white woman, [she] was raised to follow the rules."

    b. In December 2016, Supervisor Shirl told LC Williams and Plaintiff Harris that she "does not like to hire Africans as [Lead Clinicians]." (Supervisor Hunter repeated this statement to Plaintiff Bertier in December of 2016.)

    c. In December 2016, Supervisor Hunter complained that she couldn't make an impact on families because they "couldn't stand a white woman coming into their house and telling them what to do." (The majority of Defendant's clients are racial minorities.)

    d. In or around December 2016, while in Plaintiff Bertier's presence Supervisor Shirl told Plaintiff Harris that women make better LCs than men.

    e. In January 2017, Supervisor Hunter told Plaintiff Bertier and Plaintiff Harris that most of the Therapeutic Support Staff were "unruly" and "unprofessional", referring to them as "frat boy thugs." Most of the Therapeutic Support Staff are African American.

    f. Supervisor Hunter regularly referred to female African American employees as "bitches" despite not speaking this way about female Caucasian employees.

    g. On February 11, 2017, Plaintiff Harris referred a Nigerian-American LC to Supervisor Hunter, to which she responded that she does "not hire Africans because [she] cannot understand them and they won't know how to do the job."

46. Supervisor Hunter often made comments associating African Americans with being lazy incompetent, and unintelligent while referring to Caucasians as being intelligent, hardworking, and effective.

47. Supervisor Hunter discouraged Plaintiffs Bertier and Harris and other employees from complaining to management about these and other issues, telling Plaintiffs on several

occasions not to bring any concerns to Defendants' Chief Executive Officer, Dr. Russell ("CEO Dr. Russell"), or Defendants' Administrative Director, Tara Clegg ("AD Clegg"), because they would not help Plaintiffs or their co-workers.

48. In or around February 2017, LC Williams filed a charge of discrimination with the EEOC due to Supervisor Hunter's discriminatory conduct, as noted above.

49. Over the next few months, Supervisor Hunter approached Plaintiffs Bertier and Harris on nearly a daily basis, instructing Plaintiffs to lie and claim that LC Williams' accusations were false, and that LC Williams was "crazy" if Plaintiffs were ever asked for statements in response to any investigation that concerned LC Williams' accusations against Supervisor Hunter and Defendants.

50. In or around early March 2017, Plaintiffs explained to Supervisor Hunter that they did not feel comfortable discussing LC Williams' EEOC Charge with her.

51. Despite this, Supervisor Hunter continued to discuss LC Williams' case with Plaintiffs Bertier and Harris.

52. Supervisor Hunter asked Plaintiffs to testify on her behalf on several occasions, at times becoming combative and yelling at Plaintiffs while instructing Plaintiffs that their testimony had to favor Supervisor Hunter.

53. On several occasions, Plaintiffs Bertier and Harris requested to meet with Dr. Russell, AD Clegg, and Defendants' Clinical Supervisor, Dr. Christina Lecker ("Dr. Lecker"), to discuss Plaintiffs' concerns, which included Supervisor Hunter's efforts to get Plaintiffs Bertier and Harris to falsely testify before the EEOC.

54. Dr. Russell, AD Clegg, and Dr. Lecker refused to meet with Plaintiffs.

55. On or around April 25, 2017, Defendants fired Plaintiff Harris from its Fredrick Douglass location.

56. Defendants told Plaintiff Harris that the decision to fire her was made by the principal of the school and the principal's supervisor.

57. Though CEO Dr. Russell offered to send Plaintiff Harris to a new school, Plaintiff Harris' transfer would have resulted in a substantial decrease in her caseload and therefore her compensation.

58. Immediately following the meeting, Defendants removed Plaintiff Harris from its email chain, group texts and all communication from Defendants ceased.

59. Defendants never offered Plaintiff Harris another position.

60. In or around June of 2017 Plaintiff Bertier learned that his contract would not be renewed.

61. Defendants never gave Plaintiff Bertier a reason for its refusal to renew his contract.

62. Defendants never offered Plaintiff Bertier another position.

63. Defendants subjected Plaintiffs to discrimination and a hostile work environment on the basis of race and/or gender and fired Plaintiffs because of their race and/or gender and/or fired Plaintiffs in retaliation for their refusal to lie on Defendants' behalf in relation to LC's Williams Charge of Discrimination.

64. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT I
### Violations of the Fair Labor Standards Act ("FLSA")
**(Failure to Pay Overtime)**
**Plaintiffs v. Defendants**

65. The foregoing paragraphs are incorporated herein as if set forth in full.

66. At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the FLSA.

67. At all times relevant herein, Plaintiffs were employed by Defendants as "employees" within the meaning of the FLSA.

68. The FLSA requires that covered employees be compensated at least one-and-one-half times their regular rate for hours worked over 40 per workweek. 29 U.S.C. § 207.

69. Defendants' practice of failing to pay Plaintiffs an overtime rate not less than one and one-half times their regular rate for all hours over forty violates the FLSA. *See* 29 U.S.C. § 207.

70. None of the exemptions provided by the FLSA are applicable to the Defendants or to Plaintiffs.

71. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT II
### Violations of Title VII
**(Race Discrimination/Harassment/Hostile Work Environment)**
**Plaintiffs v. Defendants**

72. The foregoing paragraphs are incorporated herein as if set forth in full.

73. At all times relevant herein, Defendants were an "employer" within the meaning of Title VII.

74. At all times relevant herein, Plaintiffs was employed by Defendants as "employees" within the meaning of Title VII.

75. Title VII prohibits employers, such as Defendants, from discriminating against an employee on the basis of race.

76. Defendants violated Plaintiffs' rights under Title VII by discriminating against Plaintiffs because of their race.

77. Plaintiffs were consistently subjected to pervasive and/or severe racial harassment during their tenure with Defendant which was objectively offensive.

78. Any reasonable person would have felt that he or she was subjected to a hostile work environment due to Defendants' conduct.

79. Defendants' management team was made aware of Plaintiffs' complaints of race discrimination at various times during Plaintiffs' employment and failed to take any meaningful action in response to same other than to illegally discipline and terminate Plaintiffs.

80. Defendants' actions as set forth above constitute violations of Title VII.

81. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT III
### Violations of Title VII
**(Gender Discrimination/Harassment/ Hostile Work Environment)**
**Plaintiff Bertier v. Defendants**

82. The foregoing paragraphs are incorporated herein as if set forth in full.

83. Plaintiff Bertier was subjected to severe and pervasive sexual harassment and/or sex discrimination which was both offensive and unwelcome.

84. Defendants failed to remedy the gender harassment and/or gender discrimination to which Plaintiff Bertier was subjected even after receiving notice of same.

85. Any reasonable person would have felt that he or she was being subjected to gender harassment and/or gender discrimination due to the use of the highly offensive language by Plaintiff Bertier's Supervisor, and by Defendant's failure to remedy such harassment after being put on notice of same, and by Defendant's retaliatory conduct taken in response to Plaintiff Bertier's complaints of harassment.

86. Defendants' actions as set forth above constitute violations of Title VII.

87. As a result of Defendants' unlawful conduct, Plaintiff Bertier has been harmed.

## COUNT IV
**Violations of Title VII**
**(Retaliation/Wrongful Termination)**
**Plaintiffs v. Defendants**

88. The foregoing paragraphs are incorporated herein as if set forth in full.

89. Title VII prohibits employers, such as Defendants, from retaliating against employees who engage in protected activities by complaining about racial harassment, racial discrimination, or gender discrimination.

90. Plaintiffs engaged in a protected activity under Title VII by complaining to Defendants about racial harassment, racial discrimination and gender discrimination.

91. Defendants violated Plaintiffs' rights under Title VII by terminating Plaintiffs in retaliation for their complaints of racial harassment, racial discrimination and gender discrimination.

92. Defendants' actions as set forth above constitute violations of Title VII.

93. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT V
**Violations of 42 U.S.C. § 1981**
**(Race Discrimination/Harassment/Hostile Work Environment)**
**Plaintiffs v. Defendants**

94. The foregoing paragraphs are incorporated herein as if set forth in full.

95. Plaintiffs were subjected to severe and pervasive racial harassment and a racially hostile work environment which was both offensive and unwelcome.

96. Defendants' management team was made aware of Plaintiffs' complaints of race discrimination at various times during Plaintiffs' employment and failed to take any meaningful action in response other than to illegally discipline and terminate Plaintiffs' employment.

97. Any reasonable person would have felt that he or she was being subjected to racial harassment/a racially hostile work environment due to the use of the highly offensive racially charged language used at work and by Defendants' conduct in failing to effectively remedy the racial harassment/racially hostile work environment after being put on notice of same.

98. Defendants' actions as set forth above constitute violations of 42 U.S.C. § 1981.

99. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT VI
### Violations of 42 U.S.C. § 1981
### (Retaliation/Wrongful Termination)
### Plaintiffs v. Defendants

100. The foregoing paragraphs are incorporated herein as if set forth in full.

101. Defendants' management team was made aware of Plaintiffs' complaints of race discrimination at various times during Plaintiffs' employment and failed to take any meaningful action in response other than to illegally discipline and terminate Plaintiffs' employment.

102. Defendants fired Plaintiffs, at least in part, because Plaintiffs are African American.

103. Defendants' actions as set forth above constitute violations of 42 U.S.C. § 1981.

104. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT VII
### Violations PHRA
### (Race Discrimination/Harassment/Hostile Work Environment)
### Plaintiffs v. Defendants

105. The foregoing paragraphs are incorporated herein as if set forth in full.

106. At all times relevant herein, Defendants were an "employer" within the meaning of the PHRA.

107. At all times relevant herein, Plaintiffs were employed by Defendants as "employees" within the meaning of the PHRA.

108. The PHRA prohibits employers, such as Defendants, from discriminating against an employee on the basis of race or gender.

109. Defendants violated Plaintiffs' rights under the PHRA by discriminating against Plaintiffs because of their race and/or gender.

110. Plaintiffs were consistently subjected to pervasive and/or severe racial harassment and gender discrimination during their tenure with Defendants which was objectively offensive.

111. Any reasonable person would have felt that he or she was subjected to a hostile work environment due to Defendants' conduct.

112. Defendants' management team was made aware of Plaintiffs' complaints of race and gender discrimination at various times during Plaintiffs' employment and failed to take any meaningful action in response other than to illegally discipline and terminate Plaintiffs.

113. Defendants' actions as set forth above constitute violations of the PHRA.

114. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

**COUNT VIII**
**Violations of PHRA**
**(Retaliation/Wrongful Termination)**
**Plaintiffs v. Defendants**

115. The foregoing paragraphs are incorporated herein as if set forth in full.

116. The PHRA prohibits employers, such as Defendants, from retaliating against employees who engage in protected activities by complaining about gender discrimination, racial harassment or race discrimination.

117. Plaintiffs engaged in a protected activity under the PHRA by complaining to Defendants about gender discrimination, racial harassment and race discrimination.

118. Defendants violated Plaintiffs rights under the PHRA by terminating Plaintiffs in retaliation for their complaints of gender discrimination, racial harassment and race discrimination.

119. Defendants' actions as set forth above constitute violations of the PHRA.

120. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

## COUNT IX
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
**(Failure to Pay Overtime)**
**Plaintiffs v. Defendants**

121. The foregoing paragraphs are incorporated herein as if set forth in full.

122. At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the PMWA.

123. At all times relevant herein, Plaintiffs were employed with Defendants as "employees" within the meaning of the PMWA.

124. The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 PS. § 333.104(c).

125. As described above, Defendants violated the PMWA by failing to pay Plaintiffs overtime compensation for hours worked over 40 in a workweek.

126. As a result of Defendants' unlawful actions Plaintiffs have been harmed.

## COUNT X
### Violations of the Pennsylvania Wage Payment Collection Law ("PWPCL")
**(Failure to Pay Wages)**
**Plaintiffs v. Defendants**

127. The foregoing paragraphs are incorporated herein as if set forth in full.

128. At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the PWPCL.

129. At all times relevant herein, Plaintiffs were employed with Defendants as "employees" within the meaning of the PWPCL.

130. Under the PWPCL, an employer must pay an employee all wages due and may not fail to pay an employee for all hours worked.

131. Defendants' violations of the PWPCL include, but are not limited to, failing to pay Plaintiffs for all hours worked.

132. Defendants' conduct in failing to pay Plaintiffs all owed wages violated the Pennsylvania Wage Payment Collection Law.

133. As a result of Defendants' unlawful conduct, Plaintiffs have been harmed.

### COUNT XI
### Violations of Pennsylvania Common Law
### (Breach of Contract)
### Plaintiffs v. Defendants

134. The foregoing paragraphs are incorporated herein as if set forth in full.

135. Pursuant to the Consulting Agreement, Defendants agreed to pay Plaintiffs $40 per hour for each hour that Plaintiffs worked.

136. However, Defendants failed to pay Plaintiffs $40 per hour for each hour that Plaintiffs worked.

137. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm.

### COUNT XII
### Violations of Pennsylvania Common Law
### (Unjust Enrichment/Detrimental Reliance)
### Plaintiffs v. Defendants

138. The foregoing paragraphs are incorporated herein as if set forth in full.

139. Plaintiffs worked for Defendants with the expectation that they would be compensated as promised, including but not limited to compensation of $40 per hour for each hour that Plaintiffs worked for Defendants.

140. Plaintiffs relied upon assurances, representations, and promises of Defendants with respect to their compensation and continued to work for Defendants in reliance upon such assurances, representations and promises.

141. Defendants failed to compensate Plaintiffs in accordance with its assurances, representations, and promises, to Plaintiffs' detriment.

142. At all times relevant herein Defendants were aware that Plaintiffs expected to be compensated as promised.

143. Defendants were enriched at the cost of Plaintiffs such that Defendants should equitably be required to compensate Plaintiffs for their detrimental reliance upon Defendants' promises of compensation.

144. As a result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer harm.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order providing that:

A. Defendants are to be permanently enjoined from discriminating or retaliating against Plaintiffs or anyone else on any basis forbidden by Title VII, Section 1981, PHRA.

B. Defendant are to promulgate and adhere to a policy prohibiting gender discrimination, race discrimination and retaliation;

C. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or customs in violation of state wage and hour law;

D. Defendants are to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to back and front pay;

E.	Plaintiffs are to be awarded actual damages, as well as damages for the emotional distress, pain, suffering, and humiliation caused by Defendants' actions;

F.	Plaintiffs are to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

G.	Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

H.	Plaintiffs are to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable law; and

I.	Plaintiffs are to be permitted to have a trial by jury.

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

*/s/ Richard Swartz*
 Richard S. Swartz, Esq.
Travis Martindale-Jarvis, Esq.
1101 North Kings Highway, Suite 402
Cherry Hill NJ 08034
(856) 685-7420 Phone
(856) 685-7417 Fax

Dated: May 8, 2018

**DEMAND TO PRESERVE EVIDENCE**

All Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.